NORTHWESTERN FEDERAL SAVINGS AND LOAN ASSOCIATION OF FARGO, Plaintiff and Appellee,

v.

Hugo TERNES and Myra Ternes, husband and wife, and Ronald N. Gohman and Judith K. Gohman, husband and wife, Defendants and Appellants.

Civ. No. 10076.

Supreme Court of North Dakota.

Jan. 25, 1982.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiff and appellee; argued by David F. Knutson, Fargo.

Kelsch Law Firm, Bismarck, for defendants and appellants; argued by William C. Kelsch, Bismarck.

SAND, Justice.

This is an appeal by the defendants, Hugo Ternes and Myra Ternes, husband and wife [hereinafter referred to as Ternes], from a summary judgment declaring a "due on sale" provision in a mortgage valid and enforceable pursuant to federal law and regulations.

The Northwestern Federal Savings & Loan Association, Fargo, plaintiff and appellee [Northwestern], is incorporated under the laws of North Dakota and is a federally chartered savings and loan association under the regulation of the Federal Home Loan Bank Board [Board]. On 20 Nov. 1978, Ternes purchased a home in Mandan which was financed through a promissory note delivered to Northwestern for $36,000.00, with interest at 9.75%. The loan was repayable in 300 monthly amortized installments of $320.82. The mortgage given as security for the promissory note contained a "due on sale" provision which stated as follows:

"If any sale or conveyance of said property is made by the mortgagor, his executors, administrators, successors or assigns, without the written consent of the mortgagee, its successors or assigns, and without an agreement and the instrument of conveyance under which the grantee assumes and agrees to pay the indebtedness, then in either event the mortgagee may at its option and without notice declare the entire amount of the mortgage indebtedness immediately due and payable and may foreclose the mortgage as prescribed by law."

The monthly mortgage installment payments were regularly made. However, without obtaining consent as provided for in the "due on sale" provision, Ternes executed a lease[1] with an option to purchase and later a contract for deed on the mortgaged property to Ronald L. Gohman and to Judith K. Gohman, husband and wife [Gohman]. These instruments were delivered and filed. Northwestern executed a formal notice of foreclosure on 30 May 1980[2] and commenced an action in district court seeking foreclosure of the real estate mortgage on the ground that Ternes violated the "due on sale" provision of the mortgage.[3] Ternes resisted the action and contended that the "due on sale" provision was void and unenforceable. Ternes also contended that the "due on sale" provision constituted a fine or penalty prohibited by North Dakota Century Code § 7–02–04, and further that there had been no impairment in Northwestern's security in the mortgaged property.

Northwestern moved for summary judgment and the court, after receiving briefs and other material, conducted a hearing and issued a summary judgment holding the "due on sale" provision of the mortgage valid on the basis that the federal law and regulations pursuant to the Home Owners' Loan Act of 1933, 12 U.S.C.A. 1461 et seq. [HOLA], prevailed over any state regulation or law pertaining to the exercise of a due on sale provision.

On appeal, Ternes and Gohman [appellants] raised several issues. All of them, however, are based on the main issue whether or not the due on sale provision is valid. We will discuss the various subissues as needed, along with the main issue.

We note that some of the statutory provisions of HOLA refer to or defer to state law. For example, 12 U.S.C. § 1464(h), makes the federal savings and loan associations subject to state taxation but only to

---

1. On 30 Apr 1980 Ternes entered into a lease with Gohmans which contained an option to buy. On 14 May 1980 Northwestern notified Ternes in writing that it was treating the lease with option to buy as a sale under the due on sale clause contained in the mortgage and that it was electing to accelerate the mortgage debt. Ternes continued to make monthly payments, but Northwestern returned them. On 30 May 1980, pursuant to the lease with option to buy, Ternes and Gohman entered into a contract for deed under which Ternes contracted to sell the property to Gohmans for $63,900.00 with $34,000 down and the balance of $29,900 with interest at the rate of ten percent per annum payable in 36 monthly amortized installments

of $262.40, with the balance due on the due date of the thirty-sixth installment. The contract for deed also provided that upon Gohman's payment of the purchase price in full, Ternes would convey the title to the property clear of any liens.

2. Since that date the Ternes have tendered their monthly mortgage payments to Northwestern; however, each payment was returned to Ternes.

3. Northwestern concedes that, for purposes of this appeal, the sole purpose for exercising the rights under the due on sale provision was to obtain the current (higher) interest rates.

the extent that similar state organizations are subject to taxation and no greater. Under 12 U.S.C. § 1464(n)(1), the Board is authorized to permit an association to act in the capacity of a trustee, executor, administrator, or guardian if it is not in contravention of state law. It also provides that if state savings and loan associations must comply with certain requirements, then the federal savings and loan associations will also be required to comply with the state law relative thereto if they act in such capacity.

However, HOLA does not provide for similar conditions under which loans can be made or what may or may not be included in any mortgage given to or taken by the association as security for a loan. More specifically, Congress left such matters to the Board to be governed by federal regulations.

■ The provisions of HOLA give the Board the power to promulgate rules and regulations with respect to federal savings and loan associations[4] and the rules and regulations properly adopted by the Board have the force and effect of law, and pursuant to the supremacy clause preempt state law. *See, Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962).

The regulations adopted under HOLA are not being challenged as having been improperly promulgated, therefore applying the legal doctrine expressed in *Ray, supra,* and *Free, supra,* we deem 12 C.F.R. § 545.-8–3(f) and (g) valid.

Regulation 12 CFR 545.8–3(f), adopted by the Board, in substance provides that the association may continue to include "due-on-sale clauses" in the loan instrument.[5]

Under subsection (g) the regulations[6] spell out with some specificity the manner in which the "due-on-sale" clause may be exercised, etc., but significantly neither this regulation nor any other regulation under

---

4. U.S.C. § 1464(a)(1) provides in part as follows:

"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Association', or 'Federal mutual savings banks' . . . ."

5. Regulation 12 CFR 545.8–3(f) provides as follows:

"(f) *Due-on-sale clauses.* An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976 on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

6. Regulation 12 CFR 545.8–3(g) provides as follows:

"(g) *Limitations on the exercise of due-on-sale clauses.* With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association (1) Shall not exercise a due-on-sale clause because of (i) creation of a lien or other encumbrance subordinate to the association's security instrument; (ii) creation of a purchase money security interest for household appliances; (iii) transfer by devise, descent, or operation of law on the death of a joint tenant; or (iv) granting a leasehold interest of three years or less not containing an option to purchase; (2) shall not impose a prepayment charge or equivalent fee for acceleration of the loan by exercise of a due-on-sale clause; and (3) waives its option to exercise a due-on-sale clause as to a specific transfer if, before the transfer, the association and the person to whom the property is to be sold or transferred (the existing borrower's successor in interest) agree in writing that the person's credit is satisfactory to the association and that interest on sums secured by the association's security interest will be payable at a rate the association shall request. Upon such agreement and resultant waiver the association shall release the existing borrower from all obligations under the loan instruments, and the association is deemed to have made a new loan to the existing borrower's successor in interest.

HOLA provides that the "due-on-sale" clause may be used only if authorized by or pursuant to state law.

■ By way of comparison, the Federal Bank Act, 12 U.S.C. § 36(b)(1) and (2) provide that a national bank may establish branch banks in the same manner and under the same conditions as state banks are permitted under state law. We find no such provision regarding mortgages in HOLA. In reading the two Acts, it appears that Congress employed language in both 12 U.S.C. § 1461 et seq. (HOLA) and 12 U.S.C. § 36 (national banks) so as to leave little or no doubt when, how and under what circumstances state law applies. From this we can conclude that if Congress had intended state law to apply whenever the federal acts are silent on a subject there would have been no need to put provisions in the act as to when and under what conditions state law applies. We therefore conclude that Congress intended state law to apply only under those conditions, or circumstances, specifically stated in the respective acts.

In reaching this conclusion we do not disregard the provisions of the Tenth Amendment to the United States Constitution which provides:

> "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

■ In *State ex rel Agnew*, 253 N.W.2d 184 (N.D.1977), we said that the North Dakota Legislature had plenary powers except as limited by the State Constitution, the United States Constitution and Congressional Acts in matters in which the federal government is supreme. *Verry v. Trenbeath*, 148 N.W.2d 567 (N.D.1967); *Baird v. Burke County*, 53 N.D. 140, 205 N.W. 17 (1925); See also, *Holiday Acres No. 3 v. Midwest Federal Savings and Loan of Min-*

*neapolis,* 308 N.W.2d 471 (Minn.1981); *McInnis v. Cooper Communities*, 611 S.W.2d 767 (Ark.1981). We further observed that the federal constitution is an instrument of grants, whereas the state constitution is an instrument of limitations. Further analysis of this concept leads to the inescapable conclusion that the Congress of the United States of America, unlike state legislatures, does not have plenary authority but has only such authority as is granted to it by the United States Constitution or necessarily implied from the grant. Assuming that Congress had the authority under the United States Constitution to enact HOLA we are still left with the question, did Congress intend to regulate federal savings and loan associations totally to the exclusion of state law and regulations, or did Congress intend its law to be only interstitial in nature.

If Congress had intended state law to apply except as otherwise provided it could easily have provided so in the Act instead of specifically providing, as mentioned earlier herein, when and under what circumstances and conditions, if any, state law applies to savings and loan associations.

Appellants, in support of their position, made reference to the *Holiday Acres* case, *supra,* in which the Minnesota Supreme Court had under consideration the validity of the due on sale clause in conjunction with Public Law 96–221, state usury laws and mortgage laws. After an interesting discussion involving separation of powers between federal and state government, the court concluded that the due on sale clause did not constitute an unlawful restraint upon the alienation of the investment residential property under Minnesota law. The court, in reaching its decision, first determined that the federal act did not preempt state law. The court then noted that the Minnesota Legislature, by enacting Minn. Stat. § 47.20 subd. 6,[7] determined that the

---

7. Minn.Stat. § 47.20(6) provides as follows:

"If the purpose of a conventional loan is to enable a borrower to purchase a one to four family dwelling for his or her primary residence, the lender shall consent to the subsequent transfer of the real estate if the existing

borrower continues after transfer to be obligated for repayment of the entire remaining indebtedness. The lender shall release the existing borrower from all obligations under the loan instruments, if the transferee (1) meets the standards of credit worthiness normally used

enforcement of due on sale clauses in the transfer of borrower-occupied residential property was a per se unreasonable restriction on alienation of property except to protect against impairment of the lender's security interest. It determined and concluded that the property in question was acquired for investment purposes and that Minnesota state law did not prohibit a due on sale clause provision in mortgages involving investment property. Because North Dakota does not have a statute similar to the Minnesota statute the *Holiday Acres* case is not very helpful to the instant case. (*Fidelity Federal Savings and Loan Association v. de la Cuesta*, 121 Cal.App.3d 328, 175 Cal.Rptr. 467 (1981), U.S. review granted No. 81–750, 50 L.W. 3585, when decided may resolve this and other issues.)

It also noted that the Minnesota statute, 47.203,[8] providing that the federal provisions of Public Law 96–221, Title V, Part A, § 501(a)(1),[9] do not apply is consistent with the federal act, § 501(b)(2)[10] of Public Law 96–221 which authorizes states to exempt themselves from the provisions of 501(a)(1) of Public Law 96–221. We note, however, that the federal act specifies in 501(b)(2) and (3)[11] those situations and circumstances from which the state may not exempt itself. These items further illustrate that the instant case is not comparable to the *Holiday* case. A careful review of Title V, Public Law 96–221 reveals other provisions permitting state law to govern under certain conditions rather than federal law.

Appellants argued that HOLA and its regulations improperly preempted state

by persons in the business of making conventional loans, including but not limited to the ability of the transferee to make the loan payments and satisfactorily maintain the real estate used as collateral, and (2) executes an agreement in writing with the lender whereby the transferee assumes the obligations of the existing borrower under the loan instruments. Any such agreement shall not affect the priority, validity or enforceability of any loan instrument. A lender may charge a fee not in excess of one-tenth of one percent of the remaining unpaid principal balance in the event the loan or advance of credit is assumed by the transferee and the existing borrower continues after the transfer to be obligated for repayment of the entire assumed indebtedness. A lender may charge a fee not in excess of one percent of the remaining unpaid principal balance in the event the remaining indebtedness is assumed by the transferee and the existing borrower is released from all obligations under the loan instruments.

8. Minn.Stat. § 47.203 provides as follows:

"The provisions of Pub.L. 96–211 [*sic*, 96–221], Title V, Part A, Section 501(a)(1), do not apply with respect to a loan, mortgage, credit sale or advance made in this state after December 31, 1981, nor with respect to a loan, mortgage, credit sale or advance secured by real property located in this state and made after December 31, 1981."

9. Public Law 96–221, Title V, Part A, § 501(a)(1), provides in part as follows:

"The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not

apply to any loan, mortgage, credit sale, or advance . . . ."

10. Public Law 96–221, Title V, Part A, § 501(b)(2), provides as follows:

"Except as provided in paragraph (3), the provisions of subsection (a)(1) shall not apply to any loan, mortgage, credit sale, or advance made in any State after the date (on or after April 1, 1980, and before April 1, 1983) on which such State adopts a law or certifies that the voters of such State have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such State does not want the provisions of subsection (a)(1) to apply with respect to loans, mortgages, credit sales, and advances made in such State."

11. Public Law 96–221, Title V, Part A, § 501(b)(3) provides as follows:

"In any case in which a State takes an action described in paragraph (2), the provisions of subsection (a)(1) shall continue to apply to—

(A) any loan, mortgage, credit sale, or advance which is made after the date such action was taken pursuant to a commitment therefor which was entered during the period beginning on April 1, 1980, and ending on the date on which such State takes such action; and

(B) any loan, mortgage, or advance which is a rollover of a loan, mortgage, or advance, as described in regulations of the Federal Home Loan Bank Board, which was made or committed to be made during the period beginning on April 1, 1980, and ending on the date on which such State takes any action described in paragraph (2)."

law. This argument is not persuasive because to have a preemption it is essential that a state law exists in opposition or contrary to HOLA.

Significantly, the appellants do not contend that the due on sale clause is prohibited by any state statute, neither do they specify any North Dakota common law nor are we aware of any, which prohibits a due on sale clause or specifically sets out 'under what conditions such clause may be used.

Ternes asserted that Northwestern does not have a contractual right to accelerate the debt because of Ternes' sale to Gohmans. Ternes points out the following undisputed facts:

1. Ternes did not default in paying the monthly installments of principal and interest.

2. Ternes remains liable on the note to Northwestern.

3. Northwestern's security position is not changed or in any way diminished.

4. Northwestern would receive all interest bargained for and no default has occurred, i.e., Ternes did not commit waste or fail to pay taxes and insurance installments.

5. There is no evidence that Gohmans are not excellent credit risks or that they will not preserve and protect the security.

6. Not only is Northwestern not any less insecure, their position is improved because with the sale, two families (both Ternes' and Gohmans) have a vital stake in seeing that Northwestern's loan is repaid in a timely manner.

NDCC § 35–03–05 sets out a mortgage form and provides that a mortgage of real property may be made in substantially the form which is set out. An examination of the form discloses that a due on sale clause is not contained therein. However, we specifically note the statute does not require that the mortgage be in the form as set out but only provides it *may* be made in substantially the form as set out. NDCC § 35–03–01.1 defines a "mortgage" as follows:

"A mortgage is a contract by which specific real property capable of being transferred is hypothecated for the performance of an act without requiring a change in possession . . . made only to secure the performance of an act."

Section 35–01–19 provides:

"A lien is accessory to the act for the performance of which it is a security, whether any person is bound for such performance or not, and is extinguishable in like manner with any other accessory obligation."

The appellants also argued that the promissory note is what controls and should be examined, rather than the mortgage, and that the promissory note does not contain a due on sale clause.

■■■■ We believe the promissory note and mortgage are inter-related documents and the conditions of mortgage, out of necessity, relate to the entire transaction unless it can be established through competent evidence that one or the other is to be treated separately. Even if such were possible, the mortgage is given for security and a promise to pay the promissory note and the conditions set forth therein would prevail as to the security given even though the same conditions are not recited in the promissory note. Any other approach would bring about absurd results which the law does not favor.

The appellants also vigorously contended that the due on sale clause in any event may or could only be enforced or employed after first showing some damage, a detriment, or impairment of security·as a result of the sale.

We note that the Forty-seventh Legislative Assembly rejected House Bill 1610 which would have accomplished substantially what Ternes claims North Dakota law is with regard to the necessity of showing impairment.[12] Our research has revealed

12. House Bill 1610 provided in part:
"SECTION 1. INTENT. The legislative assembly finds that clauses in mortgages and

deeds of trust on residential real property which allow the mortgagee to accelerate payments or increase the interest rate when there

no other enacted statute which would require a showing of impairment.

■ Ternes also cites NDCC § 41–01–18 (UCC 1–208) [13] and asserts that it "evidences a clear legislative intent to allow acceleration of a promissory note only in those cases where the payee in good faith believes 'that the prospect of payment or performance is impaired.'"

We do not believe that section applies to the situation presented when acceleration is allowed because of a failure to obtain the written consent of Northwestern pursuant to a due on sale clause. That section contemplates an acceleration clause in a contract where the payment or performance is accelerated "at will" or "when he [payee] deems himself insecure."

The clause in the instant case is not similar to an "at will" clause but rather is a clause which may trigger acceleration upon failure to obtain written consent to a sale or conveyance.

■ Appellants did not contend nor did they argue, either directly or indirectly, that the mortgage was obtained from Ternes by or through any deception or fraud. The mortgage was obtained and entered into voluntarily and freely and as such constitutes a valid contract between the parties.

However, the appellants contended that the due on sale clause violates NDCC § 47–02–26, which provides:

"Restraints on alienation—When void. —Conditions restraining alienation, when repugnant to the interest created, are void."

In support of that argument, the appellants cited *Tucker v. Lassen Savings & Loan Association*, 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (1974), in which the California court held that the specific due on sale clause violated a California statute which is similar, if not identical, to the North Dakota law, § 47–02–26, cited above. The case involved a state savings and loan association and not a federal saving and loan association. The due on sale clause in the *Tucker* case was dissimilar to the one under consideration here. In the *Tucker* case the due on sale clause in effect provided that any sale or transfer triggered the due and payable provision, whereas in the instant case it is either or both a sale without the written consent or a transfer or an assumption of the indebtedness without the approval of the mortgagee which triggers the due on sale provision. For that matter, 12 C.F.R. 545.8–3(g) sets out which transfers do not activate the due on sale clause. Furthermore, subdivision (g)(3) of this rule provides that certain transfers or sales may be made without activating the due on sale clause if the savings and loan association agrees that the credit of the successor is satisfactory and that the interest on the sums secured will be payable at a rate requested by the association. Even without this distinction and focusing on the provisions of the instant due on sale clause, we note from the record that no written consent was obtained nor was an effort made to get the written consent which is required by 12 C.F.R. 545.8–3(f).

Because of the factual situation we need not determine if the due on sale clause in

is a transfer of the property by the mortgagor constitute an unreasonable restraint upon alienation of property to the detriment of the public welfare.

"SECTION 2. UNENFORCEABLE PROVISIONS.

"1. A provision in a mortgage instrument or a deed of trust securing an interest in residential real property which permits:

a. An acceleration of payment of an indebtedness due in the event of a transfer of all or any part of the mortgagor's interest to another party by any means;

·  ·  ·  ·  ·

is unenforceable unless the security interest is substantially impaired."

**13.** NDCC § 41–01–18 provides as follows:

"A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

the mortgage can be reconciled with 12 C.F.R. 545.8–3(g)(3). The instant due on sale clause and the federal regulations relating thereto allow sales or transfers upon reasonable conditions rather than making the due on sale clause applicable on any sale or transfer, therefore the rationale of *Tucker, supra* is not applicable. Nor do we believe that the clause in the instant situation is in violation of NDCC § 47–02–26. Out of necessity, our opinion is limited to the facts of the case. The due on sale clause and the regulation, 12 C.F.R. 545.8–3(f), clearly required "written consent." This obviously implied that a request or presentation had to be made first, which was not done.

■ The Nebraska Supreme Court, in *Occidental Savings & Loan Association v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980), held that a due on sale clause in a mortgage was neither a direct nor indirect restraint on alienation and was enforceable absent pleading and proof by mortgagor that such enforcement would be inequitable. The rationale of this case is persuasive. The appendix to the opinion establishes that the court did extensive research before reaching its conclusion. We have no reason to reject its rationale.

■ In resolving issues such as we have in the instant case, the constitutional authority of Congress, the nature and congressional intent of the Act including a balancing of the tenth amendment to the United States Constitution with the supremacy clause of the United States Constitution, especially if a conflict exists between a federal law and a state law, all play a significant role. We have considered them. In addition, we conclude that no state law in conflict with HOLA has been brought to our attention, and we are not aware of any. Our examination of HOLA and related acts discloses that whenever Congress intended either state law to control a certain activity under certain conditions or circumstances it used clear and precise language to accomplish this. From this we conclude that if Congress had intended state laws to apply regarding the

due on sale clause in mortgages it would have employed similar language employed in Public Law 96–221 (state usury laws and mortgage usury laws). The absence of such provision in HOLA regarding the due on sale clause militates favorably toward a conclusion that Congress intended its congressional act, HOLA, to apply except where it expressly provided otherwise. Also taking into consideration that North Dakota does not have any statutory provision specifically pertaining to the due on sale clause and that the Legislature has actively rejected such legislation, we are compelled to conclude that HOLA and its properly adopted regulations control and that the due on sale clause is not invalid.

■ However, as to the mortgage installment payments presented to and refused by Northwestern, we conclude that Northwestern is not entitled to any interest on any money due as a result of Northwestern's refusal to accept payments.

This being a question of public concern, neither side is entitled to assess costs on appeal.

ERICKSTAD, C. J., VANDE WALLE, and PEDERSON, JJ., and SCHMALENBERGER, District Judge, concur.

SCHMALENBERGER, D. J., sitting in place of PAULSON, J., disqualified.