Hillsborough
No. 80-259

MICHAEL M. MILLS, JR. *& a.*

v.

NASHUA FEDERAL SAVINGS AND LOAN ASSOCIATION

August 10, 1981

*William M. Ladd,* of Hollis, on the brief and orally, for the plaintiffs.

*Smith, Currier, Connor, Wilder & Lieberman P.A.,* of Nashua (*Philip R. Currier* on the brief and orally), for the defendant.

BOIS, J.  In this case of first impression we are asked to decide whether a due-on-sale clause contained in a mortgage instrument constitutes a per se unreasonable restraint on alienation or whether the manner in which it was applied amounted to an unreasonable restraint on alienation. In both instances we answer in the negative and, therefore, affirm the result below.

On February 18, 1977, the plaintiffs purchased certain property in Nashua from William L. and Theresa M. Dube, giving a first mortgage to the defendant bank in the amount of $32,800 at an interest rate of 10-3/4 percent per year. At that time the plaintiffs also executed a second mortgage to the sellers for $9,000.

The mortgage instrument to the defendant contained the following provision in paragraph 17:

"Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or

transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17 and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and Note."

On December 21, 1979, the plaintiffs conveyed this property to Antone and Elizabeth Holevas for $59,600, receiving an $8,950 down payment and a wrap-around mortgage of $50,650 at 12 percent annual interest. On that date, the defendant's mortgage had a balance of $31,211.29, and the Dube second mortgage had a balance of $9,000. The defendant was not notified of this transfer by the plaintiffs, but claimed that it became aware of the transaction in mid- or late February 1980.

On March 14, 1980, the defendant notified the plaintiffs that it intended to accelerate the balance due on the mortgage and to demand payment in full in accord with paragraph 17 of the mortgage instrument. The record also reveals that the defendant offered the Holevas' the opportunity to assume the mortgage at a rate of 14-3/4 percent, which was the effective interest rate at the time the plaintiffs conveyed the property to the Holevas'. On April 21, 1980, the defendant forwarded a notice of the mortgagee's sale to the plaintiffs, citing a general breach of condition.

On April 30, 1980, the plaintiffs filed a bill in equity in the form of a petition to enjoin the mortgagee's sale. In a decision dated May 22, 1980, the Master (*Griffith*, J.) recommended and the Court (*Flynn*, J.) approved the denial of the injunction against the foreclosure sale. The master, in pertinent part, ruled that "[t]he Master does not accept . . . that clause 17 . . . is ambiguous and does not permit an interpretation which would make the transfer plus the wrap-around mortgage a breach of condition 17. . . ." The plaintiffs appeal the decision to this court, alleging that paragraph 17 of the mortgage instrument is unenforceable because it amounts to an unreasonable restraint on alienation, and, furthermore, that paragraph 17 would permit the sale of the subject premises as executed in these circumstances.

■ ■ We first consider the plaintiffs' argument that paragraph 17 of the mortgage instrument is unenforceable because it amounts to a per se unreasonable restraint on alienation of property as

defined by Section 404 of the Restatement of Property which provides, in part:

"(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance
  (a)  to be void; or
  (b)  to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
  (c)  to terminate or subject to termination all or a part of the property interest conveyed."

We do not conclude that due-on-sale clauses are per se invalid. *See* G. OSBORNE, G. NELSON & D. WHITMAN, REAL ESTATE FINANCE LAW § 5.23, at 303 (1979) (hereinafter "REAL ESTATE FINANCE LAW"). Although paragraph 17 of the mortgage instrument before us contained an acceleration clause, this, in itself, did not result in the forfeiture of the owner's title and did not preclude the mortgagor from conveying the property. *Occidental Sav. & Loan Ass'n v. Venco*, 293 N.W.2d 843, 845 (Neb. 1980); *see Williams v. First Federal Sav. & Loan Ass'n*, 651 F.2d 910 (4th Cir. 1981). Lacking any impingement on the owner's freedom to convey the property, paragraph 17 does not constitute a per se unreasonable restraint on alienation.

The plaintiffs next argue that paragraph 17, as applied to the circumstances of this case, constituted an unreasonable restraint on the alienation of the property. Much of the plaintiffs' reasoning in support of this contention is based on public policy considerations; they cite the various jurisdictions that have prohibited or restricted due-on-sale clauses. *See, e.g., Wellenkamp v. Bank of America*, 582 P.2d 970 (Cal. 1978). Public policy arguments favoring a presumption of automatic enforcement of such clauses can also be made. *See generally* REAL ESTATE FINANCE LAW § 5.22. The plaintiffs also assert that the defendant bank, in derogation of public policy, "insisted on its absolute technical right to foreclose upon the security premises upon sale or transfer without its prior written consent." *But see Occidental Sav. & Loan Ass'n v. Venco*, 293 N.W.2d at 849. We find no merit to these arguments.

We note that paragraph 17 is virtually identical to the one by which the Federal Home Loan Bank Board (FHLBB), whose regulations affect all federally chartered savings and loan associations, permits and regulates the use of due-on-sale clauses. *See* 12 C.F.R. § 545.8-3(f)–(g) (1980). The standard national mortgage form

approved by the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association, both quasi-federal entities, requires and uses a due-on-sale clause that is virtually identical to that of the FHLBB. REAL ESTATE FINANCE LAW § 5.25, at 310. The federal savings and loan associations contend that the exercise of such an acceleration option shall be governed exclusively by the terms of the contract between the lender and the borrower and all rights and remedies shall be fixed and governed by that agreement. *See* 12 C.F.R. § 545.8-3(f) (1980). Their argument is that any State law or decision to the contrary is preempted by the supremacy clause of the United States Constitution. U.S. CONST. art. VI. *See generally* Freeman & Roberts, *Due on Sale Clauses: Reasonable Restraints?*, 17 TRIAL, April 1981, 34, 35. Authorities, including federal courts, remain divided on the question of the validity of these clauses.

The plaintiffs also argue that the instruments before the court are unenforceable because they form an "adhesion contract" imposed on borrowers on a "take-it-or-leave-it basis." They contend that the degree of sophistication of the borrower in real estate dealings is immaterial because he is without a realistic opportunity to bargain; therefore, he is the weaker party who is forced to accept a form contract of adhesion.

■■ We have recognized the detrimental effects that often result in transactions involving such adhesion contracts or overreaching by one party. *Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc.*, 121 N.H. 344, 347, 430 A.2d 638, 640 (1981). Absent evidence to the contrary, however, the mortgage agreement entered into between the defendant bank and the plaintiffs is presumed to have resulted from a mutual meeting of the minds and constitutes a legally enforceable contract. *See Turcotte v. Griffin*, 120 N.H. 292, 294–95, 415 A.2d 668, 669–70 (1980); *Simon v. New Hampshire Sav. Bank*, 112 N.H. 373, 375, 296 A.2d 913, 915–16 (1972). Parties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably. Annot., 69 A.L.R.3d 713, 740 (1976).

■ The plaintiffs contend that the bank's sole purpose in foreclosing is to obtain a higher interest rate and, therefore, to take unfair advantage of plaintiffs. An examination of the loan instruments before us reveals that the note reserved to the maker a right to anticipate payment or to prepay the total indebtedness without penalty.

"Thus . . . neither party was at the mercy of the other, since each was in a position to protect his own interest as fluctuations of the money market might dictate.

. . .

[Furthermore,] [t]he right sought to be exercised by the defendant bank bears no aura of the unconscionable, but is in conformity with the policy that funds of savings bank depositors shall be kept soundly invested."

*Simon v. New Hampshire Sav. Bank*, 112 N.H. at 374–75, 296 A.2d at 915–16; *Malouff v. Midland Federal Savings & Loan Ass'n*, 509 P.2d 1240, 1245 (Cal. 1973); *Gunther v. White*, 489 S.W.2d 529, 531–32 (Tenn. 1973). The plaintiffs also fail to address the question why a court should "depart from the law which requires it to enforce valid contracts and strike down the acceleration option simply because its exercise will let [them, rather than the bank], make the profit on the interest rate occasioned by the increased cost of money." *Gunther v. White, supra* at 532.

We conclude that none of the potentially harmful bargaining elements found in *Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc. supra* exist in the circumstances before us. *See Cailler v. Humble Oil & Refining Co.*, 117 N.H. 915, 919–20, 379 A.2d 1253, 1256 (1977).

■ ■ The plaintiffs further argue that the language of paragraph 17 is ambiguous and should, therefore, be construed against its author, the defendant. We have consistently held that "[i]t is this court's task to interpret the contract, using facts found by the trial court." *Thiem v. Thomas*, 119 N.H. 598, 602, 406 A.2d 115, 117 (1979). Based on our reading of the mortgage instruments, we agree with the master that they are unambiguous and that their plain meaning must be given effect, thereby rendering the sale subject to the defendant's right to accelerate. Absent any attendant circumstances that would result in the enforcement of the due-on-sale clause producing an inequitable result, the clause is enforceable as applied to these facts and does not constitute an unreasonable restraint on alienation.

■ ■ In summary, we hold that due-on-sale clauses are valid and enforceable. However, a court in equity may refuse to allow a mortgage to be foreclosed when acceleration of the due date would amount to *unconscionable or inequitable conduct by a lender. See* RSA 498:1. We suggest that there may be a number of situations, such as transfers to a spouse who becomes a co-owner, transfers to a spouse incidental to a marriage dissolution proceeding or settle-

ment, and transfers to an inter vivos trust of which the mortgagor is a beneficiary, which should be considered in addition to the conditions contained in paragraph 17 as possible exceptions to the strict enforcement of due-on-sale clauses.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.