[No. 4929-9-III.   Division Three.   February 17, 1983.]

RICHARD A. MAGNEY, ET AL, *Respondents*, v. LINCOLN
MUTUAL SAVINGS BANK, *Appellant*, GARY L.
NICKESON, ET AL, *Respondents*.

46

*Paul Allison* and *Randall & Danskin,* for appellant.

*Joseph Simpson, James E. Winton, John T. Krall,* and *Richter, Wimberley & Ericson,* for respondents.

Roe, C.J.—The issue in this case is whether a state chartered mutual savings bank may enforce a "due–on–sale" provision in a deed of trust when the borrower later assigns his interest in the property and there is no increased risk to the lender.

In 1977, plaintiffs Richard and Lynn Magney purchased a 4–family dwelling. To finance the purchase price of $76,000, Magneys borrowed $55,000 from defendant Lincoln Mutual Savings Bank. They signed a promissory note at 9½ percent interest for 25 years, which note was secured by a deed of trust. The Magneys also executed a mortgage of $8,000, junior to the deed of trust, to Powell and Christian, from whom they purchased the property.

In 1979, the Magneys entered into a purchase and sale agreement agreeing to sell the fourplex to Gary and Marilyn Nickeson for $100,000 with $25,000 as down payment and $75,000 to be paid at 10 percent interest. This sale agreement did not mention either the deed of trust in favor of Lincoln or the mortgage. The Magneys informed Lincoln of the proposed sale and after discussions Lincoln informed the Magneys the new buyer would have to be acceptable to the bank, that the interest rate on the loan would be increased and that a 1 percent fee would be charged. The Magneys refused to accept these conditions as the Nickesons were not assuming the Magneys' loan. After further discussion, the Magneys and Nickesons closed the sale on July 14, 1979. The final wraparound contract provided both

encumbrances remained the obligation of the Magneys and also established an escrow through which payments on both encumbrances would be made. On August 31, 1979, Lincoln gave 30-day notice of acceleration of the loan. The Magneys then sought a declaratory judgment and injunction. Later, they amended their complaint to include a violation of the Consumer Protection Act.

The trial court found paragraph 17[1] of the deed of trust was an unreasonable restraint on alienation and unenforceable unless Lincoln could show its security was impaired,

---

[1]Paragraph 17 provides:

17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Deed of Trust and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

This is a form deed of trust established by the Federal National Mortgage Association (FNMA) and the Federal Home Loan Mortgage Corporation (FHLMC). Lincoln uses these forms in order to sell its mortgages on the secondary market. In *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, ___ U.S. ___, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982), the Supreme Court upheld the validity of the identical due-on-sale clause as the federal regulation, promulgated by the Federal Home Loan Bank Board, preempts state law. Lincoln, however, is not a federally chartered savings and loan and therefore *de la Cuesta* does not resolve the issue before us.

which it could not. It thus enjoined Lincoln from accelerating the loan, dismissed Lincoln's counterclaim for foreclosure and also denied the Magneys' consumer protection claim. Both Lincoln and the Magneys appeal. We affirm the result.

Lincoln contends either that paragraph 17 is not a restraint on alienation or that if it is a restraint, it is a reasonable one.

Although unreasonable restraints on alienation are invalid, reasonable restraints are valid if justified by legitimate interests of the parties. *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison,* 87 Wn.2d 437, 439, 553 P.2d 1090 (1976); *Miller v. Pacific First Fed. Sav. & Loan Ass'n,* 86 Wn.2d 401, 403, 545 P.2d 546, 92 A.L.R.3d 815 (1976). Both *Miller* and *Bellingham,* which are thoroughly briefed by both parties, discussed an enforced increase in interest rates and due–on–sale clauses which allow the lender to accelerate payment upon transfer of mortgaged property.[2]

In *Miller,* the plaintiffs purchased property and executed a note and mortgage to defendant savings and loan which note provided:

> I understand this loan is personal to me and is to be secured by a mortgage or deed of trust on real property and that my personal responsibility and occupancy and/or control of such real property is a material inducement to lender to make said loan. If title to said property shall pass from me by deed or otherwise, or said property shall be sold on contract, or if the property shall be vacated by me, then such change in title or occupancy shall be deemed to increase the risk of lender, and lender or other holder may declare the entire balance immediately due and payable, *or at its sole option it may consent to said change in title or occupancy and may increase the interest rate of said*

---

[2]Both *Bellingham* and *Miller* involved sales by real estate contract. The Magneys contend paragraph 17 cannot apply to real estate sales by contract when the buyer neither assumes nor takes subject to the underlying mortgage. Because of our resolution, we need not reach this issue. We note, however, that no authority was cited to us to support this argument, and we need not consider it. *Talps v. Arreola,* 83 Wn.2d 655, 657, 521 P.2d 206 (1974).

*loan not to exceed two per cent per annum* to compensate for such increased risk. Such increase in interest shall entitle the holder to increase monthly payments on the loan so as to retire the obligation within the original stipulated time.

*Miller,* at 402. The Millers then sold the property on a real estate contract subject to the note, not an assumption of the note. The bank raised the interest rate on the loan .5 percent. The court affirmed a summary judgment for the lender, even though there was no showing of actual increase in the lender's risk by virtue of the sale to a third party. *Miller,* at 405 (citing *Gunther v. White,* 489 S.W.2d 529, 532 (Tenn. 1973)). The court reasoned that

[g]enerally, the common–law rule is that limitations on the free alienation of property are invalid. *See Malouff v. Midland Fed. Sav. & Loan Ass'n,* 181 Colo. 294, 299, 509 P.2d 1240, 1243 (1973); *Richardson v. Danson,* 44 Wn.2d 760, 766, 270 P.2d 802 (1954). But reasonable restraints that are justified by legitimate interests of the parties are not necessarily void. *See Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 299. In fact, some states have upheld "due–on–sale" clauses where payment is accelerated and the entire amount of the loan becomes due upon transfer of the mortgaged property. *See, e.g., Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 301; *Gunther v. White,* 489 S.W.2d 529, 530 (Tenn. 1973); *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works,* 58 Wis. 2d 99, 110, 205 N.W.2d 762 (1973).

Often a lender–mortgagee utilizes a due–on–sale clause in its loan agreements to achieve indirectly an increase in the loan interest rate upon a transfer of the property. The lender simply demands an increased interest rate in exchange for his consent to the transfer and for his agreement not to enforce the acceleration clause in the agreement. *See, e.g., Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 297; *Gunther v. White, supra* at 529; Note, *Judicial Treatment of the Due–on–Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability,* 27 Stan. L. Rev. 1109, 1110–11 (1975). Some states, however, have refused to enforce due–on–sale clauses, holding them to be unreasonable restraints on alienation of property and contrary

to public policy in the absence of a showing that an increase in the interest rate is reasonably necessary to protect the lender's security. In those states the transfer of the property must in fact increase the lender–mortgagee's risk before the due–on–sale clause will be held valid. *See, e.g., Baltimore Life Ins. Co. v. Harn,* 15 Ariz. App. 78, 81, 486 P.2d 190, 193 (1971); *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal. 3d 629, 638, 526 P.2d 1169, 116 Cal. Rptr. 633 (1974); *cf. La Sala v. American Sav. & Loan Ass'n,* 5 Cal. 3d 864, 882, 489 P.2d 1113, 97 Cal. Rptr. 849 (1971).

*Miller,* at 403–04. But the court found *Miller* did not involve an acceleration clause. The lender did not declare the entire balance due because Millers sold. Rather, the lender merely increased the interest rate .5 percent.

This only affects the vendor–mortgagor's asking price for the property. It does not restrain alienation. Hence, a loan agreement which permits the lender to increase the interest rate upon transfer of the mortgaged property is not invalid per se as an unreasonable restraint on alienation of property.

However, courts of equity may relieve parties from such a provision if the results are unconscionable or inequitable. *Gunther v. White, supra* at 531. *See Malouff v. Midland Fed. Sav. & Loan Ass'n,* 181 Colo. 294, 303, 509 P.2d 1240 (1973); *see also Jacobson v. McClanahan,* 43 Wn.2d 751, 755, 264 P.2d 253 (1953).

> Whether [acceleration clauses] may be utilized in a particular case is dependent upon the facts and whether the invocation of the acceleration clause would be *inequitable under the circumstances.*

(Italics ours.) *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works, supra* at 106. We feel that the increased interest rate clause in the present case should be subject to the same standards. Therefore, this kind of clause is enforceable except in situations where its operation "would be inequitable under the circumstances" and thus would justify the exercise of the court's equitable powers. *See Malo v. Anderson,* 62 Wn.2d 813, 815, 384 P.2d 867 (1963).

*Miller,* at 405–06. The court held that the .5 percent

increase in interest rate was not inequitable or unconscionable.

In *Bellingham* the owner borrowed $185,000 from plaintiff savings and loan, executing two promissory notes and mortgages which contained the following due–on–sale clause:

> The mortgagors further agree that they will not make any voluntary inter vivos transfer of the premises or any part thereof without first obtaining the written consent of the mortgagee. Any such transfer, if the mortgagee shall not so consent, shall constitute a default under the terms of this instrument . . . If the mortgagee shall so consent, it shall consent also to substitution of mortgagor's transferee as obligor under this mortgage and the aforesaid note.

*Bellingham,* at 438.

Garrison contracted to sell to Rietman. The lender did not consent and interpreted the Rietman sale as a default of the loan and declared the balance due on such sale. The court affirmed the acceleration, stating at pages 439–41:

> Generally, unreasonable restraints on the alienation of real property are invalid. *See Richardson v. Danson,* 44 Wn.2d 760, 766, 270 P.2d 802 (1954); *Malouff v. Midland Fed. Sav. & Loan Ass'n,* [*supra* at 299–300]. Reasonable restraints on alienation are valid if justified by the legitimate interests of the parties. *See Malouff v. Midland Fed. Sav. & Loan Ass'n, supra.*
>
> In *Miller v. Pacific First Fed. Sav. & Loan Ass'n,* [*supra* at 405], we interpreted a due–on–sale provision and held
>
>> that a loan agreement provision that permits the lender to increase the interest rate upon transfer of the mortgaged property, even without a showing of increased risk to the lender, is not invalid per se as an unreasonable restraint on the free alienation of property.
>
> Our *Miller* decision concerned only a portion of the due–on–sale clause which permitted the lender to increase the mortgage interest on the loan when the mortgaged property was transferred. *Miller v. Pacific First Fed. Sav. & Loan Ass'n, supra* at 403–04. The clause in this case does not give respondent the right to

increase the interest rate upon transfer of the property. It is an acceleration clause. That is, upon transfer of the mortgaged property, the monthly payments are accelerated and the entire loan is due.

In the past few years, a number of jurisdictions have interpreted such due–on–sale clauses in real property mortgages. Some courts have automatically enforced due–on–sale clauses as reasonable restraints on alienation. *See Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 300–03; *Baker v. Loves Park Sav. & Loan Ass'n,* 61 Ill. 2d 119, 333 N.E.2d 1, 4–5 (1975); *Gunther v. White, [supra* at 530]; *Mutual Fed. Sav. & Loan Ass'n v. American Medical Servs., Inc.,* 66 Wis. 2d 210, 215, 223 N.W.2d 921 (1974); *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works,* 58 Wis. 2d 99, 110, 205 N.W.2d 762 (1973). Other courts consider the clauses unreasonable restraints on alienation and contrary to public policy, unless the transfer of property increases the risk of the lender–mortgagee. *See Baltimore Life Ins. Co. v. Harn,* 15 Ariz. App. 78, 81, 486 P.2d 190 (1971); *Tucker v. Pulaski Fed. Sav. & Loan Ass'n,* 252 Ark. 849, 854–55, 481 S.W.2d 725 (1972); *Tucker v. Lassen Sav. & Loan Ass'n, supra* at 638; *Clark v. Lachenmeier,* 237 So. 2d 583, 584–85 (Fla. App. 1970); *Sanders v. Hicks,* 317 So. 2d 61, 63–64 (Miss. 1975); *United States v. Angel,* 362 F. Supp. 445, 447 (E.D. Pa. 1973). The court in *Tucker v. Lassen Sav. & Loan Ass'n, supra* at 639, explained when a transfer of the property increases the risk of the lender:

> Rather, in such a case the clause can be validly enforced only when the beneficiary–obligee can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement. Such legitimate interests include not only that of preserving the security from waste or depreciation but also that of guarding against what has been termed the "moral risks" of having to resort to the security upon default. . . . Thus, for example, if the beneficiary can show that the party in possession under the installment land contract is, or is likely to be, conducting himself with respect to the property in a manner which will probably result in a significant wasting or other impairment of the security, he may properly insist upon enforcement of the "due–on" clause. Similarly, if the beneficiary can show that the

prospects of default on the part of the vendor (requiring the inconvenience of resort to the security) are significantly enhanced in the particular situation, such circumstances might constitute a sufficient justification for enforcement of the clause despite its restraining effect. Other legitimate interests of the lender may have a similar effect.

(Citations and footnotes omitted.)

We find the reasoning of the California Supreme Court in *Tucker v. Lassen Sav. & Loan Ass'n, supra,* persuasive authority. We therefore hold the due–on–sale clause before us to be an unreasonable restraint on alienation unless the respondent can show that the enforcement of the clause is necessary to protect the lender's security.

In *Bellingham,* the bank was able to show that its security would be impaired by the prospective purchasers and thus enforcement of the acceleration clause was valid. Both *Bellingham* and *Miller* relate to resolution of this case, although paragraph 17 is neither solely an acceleration nor an increased rate provision. The right reserved in the deed of trust is to accelerate the loan; the mention of interest rate adjustment comes only when setting forth conditions under which the bank will waive its option to accelerate. Here, the bank simply accelerated. This distinguishes the present case from *Miller,* which was an increase only in interest, and posits the case under the rule in *Bellingham.* Therefore, the due–on–sale clause is an unreasonable restraint on alienation unless Lincoln could show the enforcement of the clause was necessary to protect its security. Lincoln acknowledged there was no impairment of its security by the Magney–Nickeson sale. Hence, enforcement of the clause would appear to be an unreasonable restraint on alienation.

Lincoln argues, however, that in addition to impairment of security the court may also consider the bank's interest in protecting its loan portfolio when determining the enforceability of a due–on–sale clause. Lincoln, as a savings and loan, "borrows short and lends long"; *i.e.,* it borrows from its depositors in order to fund long–term mortgages.

As a result of economic conditions, this practice has created hardship to the bank. It is unable to fund mortgages with a relatively low interest rate while it is forced to pay higher rates to its borrowers. For this reason, and as a matter of public policy, Lincoln contends it should be able to require the Magneys to pay an increased interest rate upon sale even when the purchasers do not assume the underlying mortgage. Neither *Bellingham* nor *Miller* directly addresses this rationale. Essentially this was the reasoning which the United States Supreme Court accepted to support the decision in *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* ___ U.S. ___, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982).

The question has been addressed by other courts, however. Some courts hold that such a concern should operate to make the due–on–sale clause enforceable. *Dunham v. Ware Sav. Bank,* ___ Mass. ___, 423 N.E.2d 998 (1981); *Stith v. Hudson City Sav. Inst.,* 63 Misc. 2d 863, 313 N.Y.S.2d 804 (1970); *Malouff v. Midland Fed. Sav. & Loan Ass'n, supra; Gunther v. White, supra.* Other courts have held that such a concern does not rise to a level to support enforcement of the clause and thus refused to uphold operation of the clause. *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal. 3d 629, 526 P.2d 1169, 116 Cal. Rptr. 633 (1974);[3] *Nichols v. Ann Arbor Fed. Sav. & Loan Ass'n,* 73 Mich. App. 163, 250 N.W.2d 804 (1977). Although our Supreme Court has not spoken on this issue in *Bellingham,* it cited *Tucker* as "persuasive authority". *Tucker* upheld a due–on–sale clause when the mortgagee "can demonstrate a threat to one of his legitimate interests . . .", *Tucker,* 12 Cal. 3d at 639; however, it

> reject[ed] the suggestion that a lender's interest in maintaining its portfolio at current interest rates justifies the restraint imposed by the exercise of a "due–on" clause upon the execution of an installment land contract.

---

[3]We note that *Tucker* was decided in 1974, prior to the prevailing high interest rates which have caused savings and loans to suffer nationwide losses and forced their merging with other financial institutions, but that economic situation may be transitory as interest rates have now declined to more satisfactory levels.

*Tucker,* 12 Cal. 3d at 639 n.10.

The question is whether the bank's interest in increasing its rates is a "legitimate [interest] sufficient *to justify the* restraint on alienation inherent in its enforcement." *Tucker,* 12 Cal. 3d at 639. We do not believe that such an increase is a legitimate interest. The *Tucker* court considered that preserving the security from waste or depreciation and protecting the loan from the possibility of default are such interests. In both instances, there is a direct relation between the activity feared, *i.e.,* waste or default, and the property itself. In considering the interest rate charged, however, only the bank's interests are protected. Lincoln, as a party to this contract, had the opportunity to put in whatever terms it considered reasonable. In choosing to use the standardized form deed of trust, it chose marketability in the secondary mortgage market to be more important than renegotiation of the interest rate in case of sale. We are thus not persuaded by Lincoln's argument and hold that a bank's interest in maintaining its loan portfolio is not such a legitimate interest to support enforcement of a due–on–sale clause.

In reaching our conclusion, we recognize the split of authority in the United States, carefully portrayed in the recent case of *Redd v. Western Sav. & Loan Co.,* 646 P.2d 761 (Utah 1982), which reached a result different from ours. We find the language and reasoning of *Miller* and *Bellingham* impel, if not direct, our conclusion, which we submit is the better one.[4]

---

[4]Attention is called to Laws of 1981, ch. 86, § 10, p. 394, and Laws of 1981, ch. 87, § 1, p. 397, which refer to state chartered savings and loan associations and which are mentioned in the defendant bank's brief as a request for uniformity of interpretation throughout the United States:

In addition to all powers, express or implied, that a mutual savings bank has under the laws of this state, a mutual savings bank shall have the powers of federal mutual savings banks formed under the provisions of 12 U.S.C. Sec. 1464.

The restrictions, limitations, and requirements applicable to specific powers of federal mutual savings banks shall apply to mutual savings banks exercising those powers permitted under this section insofar as the restrictions,

On cross appeal, the Magneys challenge the trial court's conclusion that there was no violation of the Consumer Protection Act and thus no award for attorney's fees under the act would be made.

RCW 19.86.020 provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

A violation of the Consumer Protection Act may be proved either by showing a per se violation, *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 276, 501 P.2d 290 (1972), or by showing an unfair or deceptive act in trade or commerce which affects the public interest, *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980). The Magneys contend Lincoln's actions are unfair, either per se or de facto.

▮ In order to establish a per se violation, the conduct must meet the twofold test: "(1) is the action illegal, *i.e.,* is it unlawful; and (2) is it against public policy as declared by the legislature or the judiciary?" *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 358, 581 P.2d 1349 (1978).

---

limitations and requirements relate to exercising the powers granted mutual savings banks solely under this section.
RCW 32.08.142.

Notwithstanding any other provision of law, a savings and loan association may exercise any of the powers conferred as of May 8, 1981, upon a federal savings and loan association doing business in this state.
Former RCW 33.12.012.

Because the mortgage in the instant case was executed in 1977, it is unnecessary to decide if these laws of 1981 change the result in a case involving a mortgage contract containing a due–on–sale clause executed after the effective date of the act.

We further note congressional enactment of the Garn–St Germain Depository Institutions Act of 1982, Pub. L. No. 97–320, 96 Stat. 1469, which is in harmony with this decision. The Garn bill preempts all state laws except for loans made during a "window period". *See Door Closes on Due–on–Sale Law—"Window" Stays Open for Some Loans,* 1 Wash. Prop. L. Rep. (Butterworth) 1 (Dec. 1982–Jan. 1983). In Washington that period commenced when *Bellingham* was decided on August 19, 1976, and ended on October 15, 1982, the effective date of the Garn bill. Loans made during this period continue to be subject to Washington law for 3 years from the effective date of the act. Since the instant case arose during the window period, it is governed by Washington law and the *Bellingham* case.

In order to recover for a per se violation, a plaintiff must prove:

> (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect.

*Wilkinson v. Smith,* 31 Wn. App. 1, 9, 639 P.2d 768 (1982); *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). There was no showing of the existence of any statutes which Lincoln had violated, or that the Magneys were damaged in any way. Therefore, the claim of a per se violation is unfounded.

Under the *Anhold* test, unfair, deceptive acts which impact the public interest may support a private cause of action under the act. The Magneys contend that Lincoln's conduct is unfair, listing a substantial number of claims. Although "deceptive practices" have been defined as those which only have a tendency or capacity to deceive a substantial portion of the purchasing public, *Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 93, 605 P.2d 1275 (1979), there has been no judicial definition of unfair in Washington. We may look to federal interpretation of federal legislation, however, to determine a meaning of unfair. RCW 19.86.920.

In determining whether something is unfair, the court may look to see

> "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common–law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

*FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 92 S. Ct. 898, 905 (1972). Lincoln's actions do not meet this test of unfairness. Due–on–sale clauses have been upheld as valid in this state and by the United

States Supreme Court. There has been no showing that the clause itself is oppressive or that it causes substantial injury.

In addition, under *Anhold,* there must be impact on the public interest in order to show a violation of the act. This is demonstrated

> when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage . . . and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold,* at 46. *See also Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 649 P.2d 828 (1982). The Magneys made no showing that they were induced to act based on the due–on–sale clause, nor that they had suffered any damage as a result of the clause. Thus, there was no violation of the act under the *Anhold* test. The trial court's refusal to find a violation of the Consumer Protection Act in this situation is correct and should be affirmed.

GREEN, J., concurs.

GREEN, J. (concurring)—I am constrained to concur because of *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison,* 87 Wn.2d 437, 441, 553 P.2d 1090 (1976), where the court stated:

> We find the reasoning of the California Supreme Court in *Tucker v. Lassen Sav. & Loan Ass'n,* [12 Cal. 3d 629, 526 P.2d 1169, 116 Cal. Rptr. 633 (1974)] persuasive authority. We therefore hold the due–on–sale clause before us to be an unreasonable restraint on alienation unless the respondent can show that the enforcement of the clause is necessary to protect the lender's security.

*Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal. 3d 629, 526 P.2d 1169, 1175, 116 Cal. Rptr. 633 (1974) held that reasonable restraints on alienation are valid if justified by the legitimate interests of the parties. *See Bellingham,* at 439. The California court, in a footnote, rejected the position

urged by Lincoln stating:

> We reject the suggestion that a lender's interest in maintaining its portfolio at current interest rates justifies the restraint imposed by the exercise of a "due–on" clause upon the execution of an installment land contract. Whatever cogency this argument may retain concerning the relatively mild restraint involved in the case of an outright sale . . . it lacks all force in the case of the serious and extreme restraint which would result from the automatic enforcement of "due–on" clauses in the context of installment land contracts.

*Tucker,* at 639 n.10. Although the issue raised by Lincoln was not decided in *Bellingham,* the court's strong reliance upon *Tucker* leads me to believe that the only reasonable restraint approved in the *Bellingham* decision is to protect the lender's security. Here, the parties agree Lincoln's security is not impaired by the sale. Hence, my concurrence.

However, even though *Bellingham* was decided in 1976, perhaps that decision should be reconsidered in light of the following:

1. There has been a sharp fluctuation in interest rates which will continue into the foreseeable future. The high cost of money as compared with outstanding loans at substantially lower interest rates has caused many bank failures.

2. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* \_\_ U.S. \_\_, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982) upheld a Federal Home Loan Bank Board regulation authorizing enforcement of due–on–sale clauses in mortgages issued by federal institutions. Here, Lincoln's mortgage was written on a uniform mortgage form issued by the Federal National Mortgage Association containing the due–on–sale clause approved in *de la Cuesta.* This form was used by Lincoln to enable it to sell the mortgage to raise new money for new loans. The evidence shows that in states where due–on–sale clauses are not enforceable, the Federal Home Loan Mortgage Corporation has refused to buy these mortgages.

3. In 1981, the Washington Legislature amended existing

statutes governing state chartered mutual savings banks and savings and loan associations to grant them the same powers as the federal mutual savings banks and federal savings and loan associations. RCW 32.08.142; RCW 33.12-.012. This indicates a legislative intent to create uniformity between these state and federally chartered banks. To deny the right to enforce due–on–sale clauses to state banks impairs their ability to compete with the federal banks in the secondary mortgage markets and mitigates the policy pursued by the recent legislation.

4. If interest rates go below the rate in the mortgage, the uniform mortgage form allows the borrower to pay the balance without penalty. Where interest rates rise above the mortgage rate, the due–on–sale clause permits the bank, upon a sale of the property, to increase the interest rate or accelerate the mortgage. Thus the corresponding interests of the parties are balanced in a volatile interest rate market.

5. Finally, there has been a marked trend in a majority of the states to uphold enforcement of due–on–sale provisions. *See Tierce v. APS Co.*, 382 So. 2d 485 (Ala. 1979); *First Fed. Sav. & Loan Ass'n v. Lockwood*, 385 So. 2d 156 (Fla. Dist. Ct. App. 1980); *Dunham v. Ware Sav. Bank*, ___ Mass. ___, 423 N.E.2d 998 (1981); *Holiday Acres 3 v. Midwest Fed. Sav. & Loan Ass'n*, 308 N.W.2d 471 (Minn. 1981); *Occidental Sav. & Loan Ass'n v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980); *Mills v. Nashua Fed. Sav. & Loan Ass'n*, 121 N.H. 722, 433 A.2d 1312 (1981); *Century Fed. Sav. & Loan Ass'n v. Van Glahn*, 144 N.J. Super. 48, 364 A.2d 558 (1976); *Crockett v. First Fed. Sav. & Loan Ass'n*, 289 N.C. 620, 224 S.E.2d 580 (1976); *Northwestern Fed. Sav. & Loan Ass'n v. Ternes*, 315 N.W.2d 296 (N.D. 1982); *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 615 S.W.2d 333 (Tex. Civ. App. 1981); *Redd v. Western Sav. & Loan Co.*, 646 P.2d 761 (Utah 1982); *United Va. Bank/Nat'l v. Best*, 223 Va. 112, 286 S.E.2d 221 (1982), *cert. denied*, ___ U.S. ___. *But see Nichols v. Ann Arbor Fed. Sav. & Loan Ass'n*, 73 Mich. App. 163, 250 N.W.2d 804

(1977); *State ex rel. Bingaman v. Valley Sav. & Loan Ass'n,* 97 N.M. 8, 636 P.2d 279 (1981).

McINTURFF, J. (dissenting)—My colleagues have held Lincoln's due–on–sale (DOS) clause to be an unreasonable restraint on alienation because of *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison,* 87 Wn.2d 437, 553 P.2d 1090 (1976). I join Judge Green in the reasons for his request that our Supreme Court reconsider *Bellingham,* but the dramatic changes in economic circumstances which have occurred since 1976 mandate my dissent.[5] In my view, the instant DOS clause is not an unreasonable restraint on alienation.[6]

In 1977, the Magneys entered into a contract with Lincoln which provided that if the property was sold, the interest rate would be readjusted or the loan would be paid off. This agreement was at arm's length and there has been no claim of overreaching. Lincoln now asks this court to enforce the terms of its contract.

---

[5]I do not dissent without thought given to the doctrine of stare decisis. This doctrine was discussed in *In re Stranger Creek,* 77 Wn.2d 649, 466 P.2d 508 (1970), where it was stated at page 653:

> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court–made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not to be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned.

It was further amplified in the dissent in *Wyman v. Wallace,* 91 Wn.2d 317, 588 P.2d 1133 (1979), at page 322:

> "[F]lexibility is necessary to enable the law to adapt itself to social change. As a society alters, so do its needs, and a serviceable legal system must be able in its development to take account of new social, political and *economic* requirements." . . . J. Salmond, *Jurisprudence* 65 (12th ed. 1966).

(Italics mine.)

[6]The reasoning and citations for this view are stated in Judge Green's concurring opinion. To restate those reasons and citations would only be duplicative.

Historically, banks have made long–term loans with the reasonable expectation, based on their past experience, that the loans would be repaid prior to their maturity date. A DOS clause allows lenders to loan mortgage money at lower rates than would otherwise be possible. The enforcement of DOS clauses offers substantial benefits to lending institution depositors and future borrowers.

In his concurrence, Judge Green succinctly points out the relationship between DOS clauses and the absence of prepayment penalties. I heartily agree with his analysis. The enforcement of a DOS clause is the counterpart to the borrower's right to prepay a loan without penalty. Both the right to prepay and the right to enforce a DOS clause are protective devices relied upon by the community to moderate gains and losses in an uncertain economy. *See Dunham v. Ware Sav. Bank,* \_\_ Mass. \_\_, 423 N.E.2d 998 (1981).

Lincoln's actions toward the Magneys were reasonable. Lincoln was only enforcing the terms of a contract that had been mutually agreed upon. Although I would rule the DOS clause in the present case is enforceable, I would do so being mindful that a court sitting in equity may refuse to allow a mortgage to be foreclosed when acceleration of the due date would amount to unconscionable or inequitable conduct by the lender. *See Mills v. Nashua Fed. Sav. & Loan Ass'n,* 121 N.H. 722, 433 A.2d 1312 (1981).

The enforceability of DOS clauses poses a fundamental public policy question. Both sides present compelling philosophical arguments. But today, our lending institutions are on unstable ground not experienced for over 50 years. Is this a time when we should insist that an agreement with the bank not be enforced, thus forcing the bank to continue with a relatively low interest not reasonably contemplated, but allow the borrower to pay off (and refinance) loans with no penalty? Is this fair?

I discern no compelling reason for not enforcing this DOS clause which was entered into in good faith with no subsequent showing of unreasonable conduct on Lincoln's part.

I would allow Lincoln to enforce the present clause.

Reconsideration denied March 15, 1983.

Review denied by Supreme Court June 21, 1983.