Hillsborough
No. 89-188

DANA A. PATTERSON AND KENNETH E. BERRY

v.

ANTHONY TIROLLO

October 17, 1990

*Gregory E. Michael P.A.*, of Merrimack (*Gregory E. Michael* on the brief and orally), for the plaintiffs.

*Luke S. O'Neill, Jr.*, of Manchester, by brief and orally, for the defendant.

THAYER, J. The plaintiffs, Dana A. Patterson and Kenneth E. Berry, appeal the dismissal by the Superior Court (*Goode*, J.) of their petition for declaratory judgment and the court's ruling that they are not entitled to prepay their mortgage loan to the defendant, Anthony Tirollo, under the terms of their purchase and sale agreement and promissory note, which were silent on the issue of prepayment. The plaintiffs argue, *inter alia*, that a promissory note which does not by its express terms restrict prepayment should not be interpreted to do so, and that the purchase and sale agreement should be

reformed to reflect their intent at the time of its execution that the loan could be prepaid. For the following reasons, we affirm the trial court's decision.

The record discloses that Mr. Tirollo owned approximately twenty-five acres of land in Hooksett which he was trying to sell during January of 1986. Conrad Croteau, who had acted as Tirollo's agent in the sale of other properties in the past, sometime in January presented the plaintiff Patterson's offer to purchase the subject property to the defendant. The offer was for $140,000 and specified seller financing of $100,000 at twelve percent interest for the period of two years. Tirollo had not given Croteau a listing agreement or any written authorization to act on his behalf, and the defendant presented contradictory testimony during trial concerning whether Croteau was authorized to act as his agent in this transaction. However, the trial court found that Croteau, who prepared the purchase and sale agreement and presented it to the parties to sign, was Tirollo's agent for purposes of the purchase and sale agreement.

On January 25, 1986, Mr. Patterson executed the purchase and sale agreement prepared by Croteau. A few days later, Tirollo signed the same document. The clause entitled "FINANCING" provided:

> "This agreement is contingent upon BUYER(s) obtaining financing under the following terms:
> AMOUNT *$100,000* TERM/YEARS *2 yrs.* RATE *12%*
> TYPE OF MORTGAGE *2 year note, interest only annually. Held by Anthony Tirollo.*"

The contract was silent on the issue of prepayment.

On March 6, 1986, Mr. Patterson and Mr. Berry executed a promissory note and mortgage deed prepared by Tirollo's attorney. The promissory note stated:

> "FOR VALUE RECEIVED, we, Dana A. Patterson and Kenneth E. Berry, jointly and severally, promise to pay to the order of Anthony Tirollo, at 10 Birchwood Road, Windham, New Hampshire 03087, two years from the date of this Note, the sum of One Hundred Thousand Dollars ($100,000.00), together with interest at the rate of twelve percent (12%) per annum, compounded and payable annually."

The note also provided for penalties in the event that a payment was late or the makers defaulted in the performance of any of the other conditions of the note, but, like the purchase and sale agreement,

was silent on the issue of prepayment. It neither disallowed prepayment nor provided for penalties should the plaintiffs choose to prepay their debt.

Not surprisingly, the mortgage deed, like the promissory note and the purchase and sale agreement, also did not indicate whether the plaintiffs' debt could be prepaid. It contained a due-on-sale clause, however, which read:

> "In the event the Mortgagors sell, transfer or convey any right, title or interest in the mortgaged premises, the obligations secured hereby shall become immediately due and payable on demand at the option of the Mortgagee."

During trial, Patterson testified that when he executed the purchase and sale agreement, he and Croteau did not discuss prepayment because Croteau knew that he would want to prepay his loan. He further testified that the due-on-sale clause included in the mortgage deed did not trouble him because he assumed he would be able to prepay the note. Croteau testified that he too assumed that the plaintiffs would be able to prepay their debt.

In contrast to Croteau's belief that the promissory note could be prepaid, Tirollo testified that his intent from the beginning was that the plaintiffs would perform in accordance with the terms of the note; that is, make interest payments of twelve percent annually for two years, and tender a lump sum payment of the entire principal at the end of the second year. Tirollo and Croteau both testified that the issue of prepayment never came up in their discussions. Moreover, Tirollo explained that he never authorized Croteau to enter into any financing negotiations on his behalf. While the plaintiffs asked the trial court to find that Croteau was Tirollo's agent for purposes of the entire transaction, the court found that Croteau was not authorized to agree on the terms of either the promissory note or the mortgage deed.

Following the plaintiffs' purchase of Tirollo's property in March of 1986, Croteau, as agent for the Conrad Realty Trust, entered into an agreement with the plaintiffs on December 17 of that year to purchase the same parcel of land. Patterson testified that when he executed the purchase and sale agreement for that transaction in December, he intended to pay off his mortgage loan to Tirollo in full. The closing between the plaintiffs and what was ultimately the Smyth Hill Realty Trust took place on December 30, 1986, and Patterson testified that he was prepared to prepay his loan from Tirollo at that time. Tirollo testified that he did not become aware that the

plaintiffs had sold the property until January, 1987, at which time he was offered $100,000, with no interest. He rejected this offer, and plaintiffs began this litigation in February, 1987.

Tirollo did not receive the interest payment that was due him in March, 1987 or the one that was due in March, 1988. He received no payments at all from the plaintiffs until August, 1988, when the plaintiffs sent Tirollo's attorney a check for about $109,830, which apparently consisted of the principal amount of the loan, together with the interest that had accrued as of December 30, 1986, when the plaintiffs had originally wanted to prepay the loan.

As a result of Tirollo's refusal to accept prepayment of the plaintiffs' mortgage loan in January, 1987, the plaintiffs filed a petition for declaratory judgment on February 20, 1987. In their petition, the plaintiffs asked the trial court to find that the defendant was required to accept full payment of the note and mortgage as of December 30, 1986, in the amount of $109,830.13. Then, on July 27, 1987, the plaintiffs filed an amendment to the petition, in which they requested the court to reform the contract between the parties to include a provision that would allow the plaintiffs to prepay the note and mortgage without penalty. Following trial, the court declined to rule that the defendant was required to accept full payment of the note as of December 30, 1986, and denied the plaintiffs' request for contract reformation, stating: "[T]he evidence does not clearly and convincingly establish [early prepayment of the note] to be the actual intent of the parties." Accordingly, the trial court dismissed the plaintiffs' petition and entered judgment for the defendant. This appeal followed.

 The plaintiffs initially argue that Croteau was Tirollo's agent for purposes of arranging the seller financing terms, and that Tirollo is thus bound by his agent's intention not to bar prepayment of the note. The law is clear that a principal is bound by the acts of its agent. *See Mannone v. Whaland*, 118 N.H. 86, 88, 382 A.2d 918, 919 (1978). However, "[a]n agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act [on the principal's] account . . . ." *ERA Pat Demarais Assoc's v. Alex. Eastman Found.*, 129 N.H. 89, 91, 523 A.2d 74, 75 (1986) (quoting *Richardson v. Sibley*, 101 N.H. 377, 379, 143 A.2d 414, 416 (1958)). The principal's manifestation need not be express to be valid; it may be oral or implied from the parties' conduct. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 349, 415 A.2d 671, 673 (1980); *Mannone v. Whaland*, 118 N.H. at 88, 382 A.2d at 920. Whether or

not authority exists for one person to act on another's behalf is a question of fact for the trial court, which we will not disturb unless the finding is not supported by the evidence or is erroneous as a matter of law. *Demetracopoulos v. Strafford Guidance Ctr.*, 130 N.H. 209, 213, 536 A.2d 189, 192 (1987). A trial court's finding is supported by the evidence if a reasonable person could have arrived at the same conclusion based on the evidence presented. *Id.*

█ In the instant case, evidence was presented that while Croteau was Tirollo's agent for purposes of the purchase and sale agreement, he was not authorized to agree to any financing terms. Furthermore, the trial court found that Tirollo did not authorize Croteau to agree to the terms of the promissory note or mortgage deed. While contradictory evidence was introduced on this issue, a reasonable person could have found that Tirollo did not manifest his intent that Croteau act on his behalf in arranging for financing. Thus, Croteau's assumptions concerning prepayment were not binding on Tirollo.

The plaintiffs next argue that the parties mistakenly omitted to express in the purchase and sale agreement their intent that the promissory note could be prepaid, and that the contract should thus be reformed to reflect this intent. In light of our conclusion above that Croteau was not Tirollo's agent for making financing arrangements and that Croteau's intentions concerning the issue of prepayment were not binding on Tirollo, the plaintiffs' argument fails.

██ "The law is well settled in this jurisdiction that reformation may be granted in a proper case where the instrument 'fails to express the intention which the parties had in making the contract . . . .'" *Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 236, 401 A.2d 201, 204 (1979) (citations omitted). However, a court will reform a contract only if the evidence is clear and convincing that: "(1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing." *Id.* at 237, 401 A.2d at 204.

█ Tirollo presented evidence that he never intended to allow the plaintiffs to prepay their note. Therefore, although the trial court found that Croteau was Tirollo's agent for purposes of the purchase and sale agreement, which provided for seller financing at twelve percent interest, Croteau was not authorized to agree to any specific financing terms on Tirollo's behalf. Additionally, there is no evidence

that the parties had agreed that the plaintiffs could prepay the note, or that the written documents were at variance with Tirollo's understanding of any of the parties' prior agreements. Hence, Croteau's assumptions concerning prepayment were not determinative of Tirollo's right not to accept prepayment of the note, and the trial court did not err in declining to reform the purchase and sale agreement.

The next argument presented by the plaintiffs is that the promissory note, which did not expressly preclude prepayment, should not be interpreted to restrict prepayment. A fundamental problem with the plaintiffs' argument is that the law is clear in New Hampshire that negotiable instruments are "payable at the time fixed therein," and in the absence of an express provision that a mortgagor is entitled to prepay his or her note, the mortgagor has no legal right to pay the debt in advance of the maturity date. *Fuller Enterprises v. Manchester Sav. Bank*, 102 N.H. 117, 120, 152 A.2d 179, 181 (1959); *accord DeCato Brothers, Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 511, 529 A.2d 952, 956 (1987). Therefore, since the plaintiffs' promissory note did not expressly provide that they were entitled to prepay their mortgage, they were required to perform in accordance with the terms of the note and to make annual interest payments for two years and a lump sum principal payment at the end of the second year.

The final argument set forth by the plaintiffs is that the promissory note, which does not provide for prepayment, together with the mortgage deed, which contains a clause prohibiting free assumption of the plaintiffs' mortgage by a subsequent grantee of the property, constitutes an illegal restraint on alienation. Section 404 of the Restatement of Property defines a restraint on alienation as:

"an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void; or
(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
(c) to terminate or subject to termination all or a part of the property interest conveyed."

Similarly, Black's Law Dictionary 1181–82 (5th ed. 1979) defines a restraint on alienation as "[a] provision in an instrument of conveyance which prohibits the grantee from selling or transferring the

property which is the subject of the conveyance." Because the plaintiffs are not prevented from selling or transferring the subject property by the terms of either the promissory note or the mortgage deed, we hold that the enforcement of these documents according to their tenor does not result in an unlawful restraint on alienation.

We have previously determined that due-on-sale clauses are not *per se* invalid, *Mills v. Nashua Fed. Sav's and Loan Assoc.*, 121 N.H. 722, 725, 433 A.2d 1312, 1314 (1981), but that the manner in which they are applied might render then unenforceable, *see id.* at 725–27, 433 A.2d at 1314–15. In the case before us, the only restrictions placed on the plaintiffs were that they were unable to prepay their note, and they were prevented from having a subsequent grantee freely assume the mortgage held by the defendant. Nothing, however, precluded the plaintiffs from selling their property in fee simple at any time to whomever they chose. They would just not be able to give a warranty deed free from all encumbrances until after the two-year promissory note became due without the consent of the mortgagee. The plaintiffs may regret having entered into an agreement under which they could not convey an unencumbered title for a period of two years. However, as we have previously stated, "[p]arties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably." *Mills*, 121 N.H. at 726, 433 A.2d at 1315.

Accordingly, for all of the above reasons, we hold that the trial court properly dismissed the plaintiffs' petition and ruled in favor of the defendant.

*Affirmed.*

HORTON, J., did not sit; the others concurred.