292

Hillsborough
No. 82-542

ANTONE & ELIZABETH HOLEVAS

v.

MICHAEL M. MILLS, JR., & ELEANOR A. MILLS

December 16, 1983

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Robert E. Jauron and Alice C. Briggs* on the brief, and *Mr. Jauron* orally), for the plaintiffs.

*William M. Ladd*, of Hollis, by brief and orally, for the defendants.

BATCHELDER, J.  This appeal arises out of a petition to enjoin a mortgage foreclosure which was granted by the trial court. We affirm.

On December 21, 1979, the defendants conveyed a parcel of real estate located on Whitney Street in Nashua to the plaintiffs. At the time of the conveyance, the property was subject to a note and first mortgage to the Nashua Federal Savings and Loan Association (Nashua Federal) in the original sum of $32,800 (the First Note) upon which there was due $31,211.29, and a note and second mortgage to William L. and Theresa M. Dube in the original sum of $9,000 (the Second Note) upon which there was due $9,000. The plaintiffs paid $8,950 as a down payment and executed a note payable to the defendants in the amount of $50,650 which was secured by a third mortgage on the premises, subject to the prior mortgages to Nashua Federal and the Dubes.

The note and mortgage to the defendants represented the balance of the purchase price and was termed by the parties a "wrap-around note and mortgage" because a portion of the principal was represented by the unpaid balances on the notes due Nashua Federal and the Dubes. The feature which distinguishes such a "wrap-around note and mortgage" from a situation where the purchaser assumes and agrees to pay a prior mortgage or mortgages is that the obligation to pay them is not assumed by the purchaser, but remains with the seller of the property with a right in the purchaser to make payments in the event the seller defaults. In such instances, payments by the purchaser are credited toward any indebtedness remaining to the seller. Such was the case here. The wrap-around mortgage from the plaintiffs to the defendants contained the following clause:

> "The within Mortgagees shall pay each installment of indebtedness due under the First Note and Second Note as such installments become due and payable thereunder. In the event the within Mortgagees shall fail to pay any installment due under said First Note or Second Note, within the grace periods allowed thereunder, the within Mortgagors shall have the right (but shall not be obligated) to make such payment direct to the holder thereof and sums so advanced by the within Mortgagors (i) shall bear interest at the rate of ten percent (10%) per annum from the date of advancement until paid, (ii) shall be immediately due and payable by the within Mortgagees to the within Mortgagors, and (iii) shall be credited against the indebtedness secured hereby."

The wrap-around mortgage also provided that in the event of a default by the defendants under either the First or Second Note, the plaintiffs could "advance any sum for the purpose of curing any

default." Any such sum advanced would be credited against the indebtedness running from the plaintiffs to the defendants.

The agreement of the parties was complicated by the fact that the First Note to Nashua Federal contained a "due on sale" clause, the effect of which was later determined by this Court in *Mills v. Nashua Federal Savings and Loan Association*, 121 N.H. 722, 433 A.2d 1312 (1981), holding that such clauses do not constitute unreasonable restraints on alienation.

On March 14, 1980, Nashua Federal notified the parties that it intended to accelerate the balance due on the First Note and demanded payment in full in accord with the "due on sale" clause of the mortgage. The demand was renewed in August of 1981 after the decision of this court in *Mills v. Nashua Federal Savings and Loan Association supra*. At this point, the plaintiffs took certain actions to preserve their interest in the real estate. They stopped making payments to the defendants on their note and negotiated an agreement with Nashua Federal to prevent its foreclosure of the real estate under the terms of the first mortgage. In accordance with the terms of this agreement entered into on October 2, 1981, with Nashua Federal, the plaintiffs agreed to a substantial increase in the rate payable on the First Note and to the payment of costs incurred by Nashua Federal in enforcing the defendants' obligations, including litigation costs.

The cessation of payments to the defendants resulted in commencement of foreclosure procedures against the plaintiffs by the defendants' publishing a "Notice of Mortgagee's Sale" on November 16, 1981. The plaintiffs brought a petition to enjoin such foreclosure on December 1, 1981. This petition was later amended to include a request for an accounting and additional equitable relief. The petition was heard on the merits by a Master (*Donald E. Gartrell*, Esq.), who recommended "that the plaintiffs' petition be granted to enjoin the defendants from foreclosure of the wrap-around mortgage by reason of failure to pay when due the August 21, 1981, payment on the wrap-around note, or to pay any subsequent installment thereon until plaintiffs have been credited in full against such installments for all sums advanced and all costs incurred by them, together with interest, as provided by the terms of said note and mortgage." The recommendation was approved by the Superior Court (*Pappagianis*, J.) on October 29, 1982, and this appeal followed.

The defendants challenge the trial court's interpretation of language contained in the wrap-around note and mortgage, as well as the court's computation of what constitutes "indebtedness" and "installment due" as these terms appear in the wrap-around note

and mortgage. The defendants contend generally that because the original mortgage to Nashua Federal was rewritten by the bank and the plaintiffs, the costs and payments assumed by the plaintiffs under this new agreement were not contemplated by the parties' wrap-around note and mortgage. Consequently, the defendants argue that the trial court erred in allowing the plaintiffs to credit payments made under this new agreement to the debt the plaintiffs owed the defendants under the wrap-around note and mortgage. We disagree.

██ The wrap-around note and mortgage must be read and interpreted together, *Cove-Craft Industries v. B. L. Armstrong Co. Ltd.*, 120 N.H. 195, 199, 412 A.2d 1028, 1031 (1980), and in light of the circumstances surrounding their signing. *MacLeod v. Chalet Susse Int'l Inc.*, 119 N.H. 238, 243, 401 A.2d 205, 208 (1979). Our task is to interpret the parties' agreement using the facts found by the trial court, whose findings will be sustained unless they are wholly unsupported by the evidence. *Mills v. Nashua Fed. Sav's and Loan Assoc.*, 121 N.H. 722, 727, 433 A.2d 1312, 1315 (1981); *Zimmerman v. Suissevale, Inc.*, 121 N.H. 1051, 1054, 438 A.2d 290, 292 (1981).

The record establishes that Nashua Federal, upon receipt of information of the fact of the sale of the property by the defendants to the plaintiffs, properly declared a default and demanded payment of the defendants of the entire debt owed it. The trial court found that the defendants, in effect, precluded any generous consideration toward them by Nashua Federal, by their failing to take steps to cure the defaults and by their ignoring pleas for affirmative action by both the bank and the plaintiffs. The plaintiffs were compelled to deal directly with Nashua Federal to protect their equity in the property, which was in jeopardy due to the defendants' failure to take corrective action.

██ The plaintiffs' agreement with Nashua Federal resulted in a change in the terms of the loan agreement and in the amount of the monthly installments due thereunder. The defendants, having sat on the sidelines so long, will not now be heard to complain that the bargain the plaintiffs struck works a hardship on them. Accordingly, we hold that the master was correct in charging the defendants with the amounts due under the terms of the renegotiated loan as well as the amounts the plaintiffs paid to the Dubes to prevent foreclosure under the Second Note and mortgage running to the Dubes. Also, we agree with the trial court that the plaintiffs are entitled to be credited for their payments to Nashua Federal of the sum of $6,372.37, representing the bank's charges in connection

with the foreclosure proceedings and with the renegotiation of the defendants' loan. These payments were also properly deemed "sums so advanced" by the plaintiffs and thus an "indebtedness" as these terms are used in the wrap-around note and mortgage.

To aid the trial court in determining the method by which the plaintiffs should receive appropriate credits for the sums advanced, the plaintiffs produced the expert testimony of a certified public accountant, whose recommendations the court substantially adopted. This expert also made observations concerning the wrap-around mortgage. We affirm.

*Affirmed.*

All concurred.