Hillsborough
No. 85-518

### RICHARD MAILLOUX

v.

### ARTHUR A. DICKEY AND JOSEPH P. KING

### RICHARD MAILLOUX

v.

### ARTHUR A. DICKEY

December 31, 1986

*Wiggin & Nourie*, of Manchester (*Edward L. Cross, Jr.*, on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Thomas J. Donovan* on the brief and orally), for the defendant Arthur A. Dickey.

*Malloy & Sullivan P.C.*, of Manchester (*Donald A. Kennedy* on the brief), and *Cullity, Kelley & McDowell*, of Manchester (*Joseph F. McDowell, III*, orally), for the defendant Joseph P. King.

BATCHELDER, J.  In this case, the plaintiff appeals from a denial of specific performance of a purchase and sale agreement for land and from a refusal to set aside the sale of that land to a third party. The purchase and sale agreement contained a clause indicating the agreement would terminate upon the failure of the parties to close the transaction by November 5, 1984. On November 11, when the sale had not been closed, defendant Arthur Dickey entered into a purchase and sale agreement to sell his land to defendant Joseph King. The plaintiff filed a petition for specific performance to com-

pel Dickey to convey him the land. Later, he petitioned to have the conveyance to King set aside. These petitions were consolidated for trial. The Superior Court (*C. Flynn*, J.), after a trial without a jury, denied the relief sought and ruled that time was of the essence of the contract and that the failure to close within the contractual time was due to the plaintiff's dilatory and neglectful conduct. For the reasons that follow, we affirm.

In June, 1984, Dickey advertised his approximately twenty-five acre tract of land in Londonderry for sale at a price of $125,000. On September 5, 1984, Dickey and Richard Mailloux, the plaintiff, entered into a purchase and sale agreement for this land. The purchase price was to be $80,000, with a $1000 deposit paid on September 5, $19,000 due in cash on the closing date, and the $60,000 balance to be financed by Dickey. Dickey dropped his price because he was anxious to retire and needed the money quickly to put his retirement plans into effect; however, he did not communicate that motive to Mailloux.

Mailloux has developed various residential subdivisions. The purchase and sale agreement was the same form used by Mailloux in his many sales of real estate. The form provided in the fifth paragraph:

> "Should the Buyer fail to pay or tender the balance of said purchase price within the time herein provided, this contract shall be terminated and the Seller shall retain the aforesaid deposit as liquidated damages for the breach of this contract."

Dickey informed the plaintiff he wanted to close as soon as possible. Mailloux replied that sixty days was the usual time for closing, and Dickey agreed to that period. Thus, November 5, 1984, was written into the form agreement as the closing date.

On September 6, Dickey requested his attorney, James J. Fleming, to draft a deed, mortgage, and note as soon as possible. After Attorney Fleming sent these documents to Dickey at the latter's home in Pennsylvania, and Dickey signed and returned them by Federal Express, Fleming mailed them to Mailloux on September 25. Apparently, Mailloux did not receive them until October 5. At that time, the plaintiff had taken no steps toward closing. On October 5, Mailloux sent the purchase and sale agreement to his attorney, David G. McDonough. A week later, Attorney McDonough informed Mailloux that he needed a deed to do the title search. Mailloux did not deliver the deed to his attorney until November 1, only two business days before the scheduled closing. Thus, the trial court

found that the plaintiff's "dilatory and neglectful conduct was the cause for not closing on November 5th."

On November 6, when Mailloux had not contacted Dickey about the closing, Dickey called his attorney to find out the status of the closing. His attorney suggested he give Mailloux a little more time. Dickey agreed to give the plaintiff a forty-eight hour extension. Attorney Fleming's paralegal telephoned Attorney McDonough and informed him of the extension. Attorney McDonough replied that another week would be more a realistic estimate of the time needed to close the deal, but he did not give an alternative closing date.

In the meantime, on November 1, defendant Joseph King, a registered real estate broker, made an unsolicited offer to Dickey to buy his land for $150,000. Dickey told King that he had an outstanding purchase and sale agreement and could not sell the land to him unless that deal fell through. He later told King that the agreement would expire on November 5. King called November 5 to check the progress of the Mailloux transaction and called frequently thereafter.

On November 6, Mailloux sent Dickey a request for a sixty-day extension, without offering new consideration and without stating a new date on which the plaintiff could close. On the same day, King sent an unsolicited purchase and sale agreement, accompanied by a $10,000 check as a deposit, which was offered contingent upon the failure of Dickey's transaction with Mailloux. On November 11, Dickey signed King's agreement and accepted $38,701.07 from King, as the balance of the down payment. During the time from November 1 to his acceptance of King's offer, Dickey scrupulously refrained from committing himself to King until the deal with Mailloux collapsed.

The plaintiff raises four issues on appeal. His main contention is that time was not of the essence of the contract. Alternatively, he argues that "even if time was of the essence, Dickey waived the closing date by not arranging a closing on November 5, 1984, and by unilaterally extending the closing date 48 hours." Mailloux also appeals the trial court's refusal to allow him to testify as to his understanding of the termination clause based on his prior usage of it. Fourthly, Mailloux contests the trial court's finding that he was dilatory and neglectful. The grounds for this last argument are that the finding was unsupported by the evidence and that the correct legal standard for denying equitable relief when time is not of the essence is willful delay.

In support of his contention that time was not of the essence, the plaintiff makes several arguments. He points out that the purchase

and sale agreement did not recite that "time was of the essence." He treats the termination clause as merely a liquidated damages clause. Mailloux also likens the termination clause to a forfeiture provision in a contract for deed.

The meaning of a contract is a matter of law for this court to decide, but where determination of the intent of the parties depends on interpreting their conduct and all the circumstances surrounding the drafting of the agreement, we will defer to the findings of the trier of fact unless they are unsupported by the evidence. *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 670–71, 475 A.2d 12, 15 (1984); *Holevas v. Mills*, 124 N.H. 292, 295, 469 A.2d 1329, 1332 (1983). We have stated that "[i]n order to determine whether time is of the essence in an agreement, the trier of fact should not use a mechanical test, but should determine the intent of the parties in light of the instrument itself and all the surrounding circumstances, including the parties' words, actions, and interpretation of their agreement." *Allard & Geary, Inc. v. Faro*, 122 N.H. 573, 575–76, 448 A.2d 377, 379 (1982).

We have held that "[w]hen time is not made of the essence in a contract, although a certain period of time is stipulated for the contract's completion, equity treats the time limitation as formal rather than essential . . . ." *Leavitt v. Fowler*, 118 N.H. 541, 543, 391 A.2d 876, 877 (1978). As a general rule, time is not considered to be of the essence unless the contract specifically states it is. *Guy v. Hanley*, 111 N.H. 73, 75, 276 A.2d 1, 3 (1971). The mere fact that a date is stated in the instrument is not enough to alter the general rule. *Id.* The phrase "time is of the essence" is not a magic incantation. For instance, in *Rogers v. Cardinal Realty*, 115 N.H. 285, 286, 339 A.2d 23, 25 (1975), we found time to be of the essence based on the inclusion of the phrase "ASAP 1973" in the contract. Thus, other words will also do the trick.

In the present case, the trial court found the termination clause of the purchase and sale agreement was even more specific than "time is of the essence." We agree. The meaning of the words could hardly be clearer. The record shows that Dickey told Mailloux that he wanted to close as soon as possible. Dickey agreed to a sixty-day period because Mailloux, who had extensive experience in real estate, told him that was the custom. At all times, Dickey acted consistently with his belief that the contract would terminate on November 5 if the deal had not been closed by then. He went to his attorney on the day after signing the purchase and sale agreement and asked him to prepare the documents as soon as possible. He

returned the documents to his attorney by Federal Express. When King approached him on November 1, Dickey explained to him that his commitment to Mailloux expired on November 5. He gave an extension of only forty-eight hours, a time in which Mailloux could have closed but which curtailed procrastination. In short, ample evidence supports the trial court's finding that time was of the essence of the contract.

Contrary to the plaintiff's contention, paragraph five is not just a liquidated damages clause. The trial court properly took note that, contrary to the agreement in this case, the standard form used by the New Hampshire Association of Realtors does not contain any termination language in its liquidated damages clause. Mailloux's form is more than a liquidated damages clause.

The plaintiff's effort to extricate himself from the termination clause by calling it a forfeiture clause is, likewise, futile. A forfeiture of property possessed by one who has purchased pursuant to a contract for deed is not a termination of a purchase and sale agreement. A contract for deed does not transfer title to the buyer until he has completed every installment payment. The law is rightly reluctant to dispossess a buyer under a contract for deed and forfeit all of the buyer's payments. *See Randall v. Riel,* 123 N.H. 757, 465 A.2d 505 (1983).

■ Since we hold that time was of the essence of the contract, we need not consider whether the forty-eight-hour extension was a reasonable time to perform. We also find no merit in the plaintiff's second argument; namely, that Dickey waived the November 5 closing date. The language of the purchase and sale agreement and Dickey's conduct in getting the documents to Mailloux put the burden of arranging the closing on Mailloux. Dickey's brief extension can hardly be taken as an expression that he no longer required an immediate closing.

The irony of this case is that the plaintiff was caught in his own trap. The plaintiff was an experienced real estate seller who used his own special sales form as a buyer in this case. The defendant was unsophisticated in real estate sales. The fact that the plaintiff might never have sprung this trap on his own buyers is irrelevant, and the trial court was correct in not admitting this testimony. By its own language, the termination clause is a trap waiting to be sprung. Furthermore, whatever Mailloux's conduct may have been in other transactions, in this case, Dickey's conduct made it clear that he understood the contract would expire if November 5 passed without a closing.

In light of our holding that time was of the essence to the contract

and, therefore, that the plaintiff was in breach when he had not arranged to close by the deadline, we need not consider whether the trial court applied the wrong standard in ruling that the plaintiff's dilatory and neglectful conduct in failing to meet the November 5 deadline was sufficient to deny him specific performance.

*Affirmed.*

THAYER, J., did not sit; the others concurred.