Grafton
No. 92-341

RICHARD COWERN & a.

v.

DONALD AND DONNA NORRIS

November 30, 1993

*Casassa & Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the plaintiffs.

*Murphy, McLaughlin, Hemeon & Lahey, P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the defendants.

HORTON, J.   The plaintiffs, Richard and Joyce Cowern and Marie York (the sellers), appeal from a decision of the Superior Court (*Coffey*, J.), finding that the financing contingency clause in a purchase and sale agreement between the parties was not satisfied and that the defendants, Donald and Donna Norris (the buyers), were therefore entitled to the return of their deposit. On appeal, the sellers argue that the financing contingency was satisfied when the buyers received bank approval for a mortgage in the amount stated in the purchase and sale agreement because the agreement did not contain an additional condition that the buyers be able to secure an equity loan to cover the down payment. We reverse and remand.

The parties entered into a purchase and sale agreement on August 29, 1987. The buyers agreed to buy two adjacent properties in Hebron for $359,500. The buyers owned a group home for the elderly in Bristol, and they intended to use the Hebron property to open a

second facility. The buyers placed a $5,000 deposit on the property, financing $3,000 of the deposit through a credit card loan. The purchase and sale agreement stated that the agreement was contingent on the buyer obtaining financing at the current rate for a conventional mortgage for a term of twenty five years in the amount of $259,500. The buyers intended to raise the money for the remaining down payment portion—approximately $95,000—by securing a separate equity loan on real property they already owned.

The buyers initially sought financing at the Plymouth Guaranty Savings Bank. Financing was approved in the amount of $287,500, but was subsequently rejected when the bank concluded that the buyers required an equity loan for the cash down payment. The buyers then sought financing at Franklin Savings Bank. Franklin Savings Bank approved a $287,000 mortgage on the property in a commitment letter dated October 22, 1987. This commitment was subject to the buyers providing the bank with a $67,500 down payment at closing.

After the commitment letter was issued, the buyers' group home took a financial downturn because of a decrease in residents in the Bristol home and on their waiting list. Due to the changes in their financial circumstances, the buyers were unable to obtain an equity loan on their other property, and they notified the bank that they did not expect to have sufficient income to pay the $287,000 mortgage. The bank continued to indicate that it was committed to the loan. Unable to secure the equity loan and pay the mortgage, the buyers notified the sellers' realtor, Greenan Realty, that they could not close on the property and requested the return of their $5,000 deposit.

After the buyers' default, the real estate market plummeted, and the sellers sold the Hebron property for $98,000 less than the $359,500 they had contracted for with the buyers. The sellers then brought suit against the buyers for the difference. The superior court ruled that the buyers were unable to meet the conditions required to secure financing because they did not have, nor could they borrow, the down payment. Because the buyers' failure to secure the down payment was completely involuntary, the superior court found that the sellers were not entitled to their requested relief and ordered the return of the buyers' $5,000 deposit.

The sellers appeal, arguing that the financing contingency in the purchase and sale agreement applied only to the ability of the buyers to secure a $259,500 mortgage and the down payment portion was solely at the buyers' risk. We agree.

■  The meaning of a contract is a matter of law for this court to decide. *Mailloux v. Dickey*, 129 N.H. 62, 66, 523 A.2d 66, 68 (1986). A financing contingency is satisfied when the mortgage commitment meets the financing requirements of the purchase and sale agreement. Mortgage commitments commonly include conditions that will be upheld and enforced unless they are unreasonable. *Welkind v. Hall*, 127 N.H. 440, 443, 503 A.2d 779, 781 (1985).

In this case, the financing contingency provided as follows: "This agreement is contingent upon BUYER(s) obtaining financing under the following terms: AMOUNT $259,500 TERM/YEARS 25 RATE Current TYPE OF MORTGAGE Conv." The agreed purchase price was $359,500. The difference between the purchase price and the amount of the mortgage reserved by the contingency was approximately $95,000, which remained the responsibility of the buyers. In the mortgage commitment from Franklin Savings Bank, the buyers were offered a mortgage for $287,000 and were required to provide the remaining $67,500 at the closing. The buyers' responsibility to provide the difference between the mortgage amount and the purchase price was less under the terms of the mortgage agreement than the parties agreed to in the purchase and sale agreement. The mortgage commitment was reasonable: it exceeded the amount of the mortgage required by the financing contingency clause and did not increase the obligation of the buyers. Accordingly, the mortgage commitment satisfied the contingency in the purchase and sale agreement and did not fail due to the buyers' inability to secure the down payment.

■■  The buyers, however, contend that when they notified the sellers' agent, Greenan Realty, before the closing date that they were unable to procure the cash down payment without an equity loan, the sellers were then placed on notice that the purchase and sale agreement was contingent on the equity loan. Even if the sellers were notified before closing that the buyers needed to obtain an equity loan, notice does not make the equity loan a contingency of the purchase and sale agreement. Under the terms of the agreement, the down payment was the buyers' risk and no amendment can be implied by notice. *See Makris v. Nolan*, 115 N.H. 135, 137, 335 A.2d 655, 656–57 (1975). In addition, it is well settled that a real estate contract can be modified only by a subsequent writing or other equitable circumstances. *See* RSA 506:1; *Langdon v. Sibley*, 100 N.H. 373, 376, 127 A.2d 156, 158 (1956); 2 A. CORBIN, CORBIN ON CONTRACTS § 301 (Supp. 1992). Nor are we impressed by the buyers' argument that because the sellers knew, at the time they signed the

purchase and sale agreement, that the buyers financed $3,000 of the deposit through a credit card loan, the sellers were thereby put on notice that the agreement was contingent on the buyers securing 100% financing.

The buyers also argue that our decision in *Bruyere v. Jade Realty Corp.*, 117 N.H. 564, 375 A.2d 600 (1977), supports the trial court's finding that the financing contingency failed due to a "complete lack of any voluntary action on the part of the [buyers] to avoid purchasing the [sellers'] property," resulting in no obligation on the part of the buyers to purchase the sellers' property. We disagree.

In *Bruyere*, we stated that the purpose of a bank financing contingency clause in a real estate sales agreement is

"to protect prospective purchasers from committing a technical breach of contract due to their inability, based on the facts and circumstances present at the time of the signing of the purchase and sale agreement, or due to some fortuitous intervening event, to secure the funds necessary to complete the purchase."

*Id.* at 565–66, 375 A.2d at 601. The funds necessary to complete the purchase discussed in *Bruyere* are limited to those funds stated in the agreement. In the present case, the financing contingency did not fail; the down payment remained the responsibility and risk of the buyers.

We reverse and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.